UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JON ETHRIDGE and RENEE D. ETHRIDGE,	Case No. 12-cv-10705
	District Judge Nancy G. Edmunds
Plaintiffs,	Magistrate Judge Laurie J. Michelson

v.

COUNTRYWIDE HOME LOANS, INC.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
MERSCORP, INC., and
BANK OF AMERICA, NA,

Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS [19] AND DENY AS MOOT DEFENDANTS' MOTION TO DISMISS [9]

This case involves a mortgage of real property located in Detroit, Michigan and laws allegedly relating to lending, mortgage, or foreclosure transactions. This description is admittedly vague, but the Amended Complaint filed by Plaintiffs Jon and Renee Ethridge does not provide case-specific details. (*See generally* ECF No. 13, Am. Compl.) Asserting that the Amended Complaint contains "a disorganized, stream-of-consciousness attack on the mortgage industry," Defendants Countrywide Home Loans, Inc., Mortgage Electronic Registration Systems, Inc., MERSCORP Holdings, Inc., (collectively "MERS"), and Bank of America, NA (collectively "Defendants") have moved to dismiss Plaintiffs' Amended Complaint. (ECF No. 19, Defs.' Mot. to Dismiss at 3.) After considering their motion and Plaintiffs' response (ECF No. 24), the Court RECOMMENDS that

Defendants' Motion to Dismiss be GRANTED and that this case be DISMISSED.[1]

## I. BACKGROUND

It appears that Plaintiffs' Amended Complaint is based in part on a template used for other complaints filed in state court and then removed to the Eastern District of Michigan. *See e.g.*, *Yopp v. Mortg. Electronic Registration Sys.*, No. 12-000344 (Wayne Cty. Cir. Ct. filed Jan. 9, 2012) *removed* No. 12-10804 (E.D. Mich. Feb. 22, 2012); *Easton v. Fannie Mae*, No. 12-001027 (Wayne Cty. Cir. Ct. Jan. 24, 2012) *removed* No. 12-10663 (E.D. Mich. Feb. 14, 2012). Perhaps for this reason it provides almost no information specific to the Ethridges' mortgage or Defendants' conduct. The following brief summary of facts is therefore based on attachments to Defendants' Motion to Dismiss and Plaintiffs' Amended Complaint.[2]

Defendants' attachments show that on August 30, 2004, the Ethridges obtained an $85,500.00 loan. (*See* Defs.' Mot. to Dismiss, Ex. B, Mortgage at 2.) Plaintiffs contemporaneously secured the loan by mortgaging property located at 17801 Rowe in Detroit, Michigan. (*See generally* Mortgage.) The Mortgage designates Mortgage Electronic Registration Systems, Inc. as "Mortgagee" and "nominee" for "Lender" America's Wholesale and its successors and assigns.

---

[1] Although it was the Court's understanding that Defendants would withdraw their first motion to dismiss (ECF No. 9) after Plaintiffs filed their Amended Complaint, that motion remains pending. It should be DENIED AS MOOT in view of the Amended Complaint and this Court's recommendation to grant Defendants' second motion to dismiss (ECF No. 19).

[2] In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to Plaintiffs' claims, (2) matters of which a court may properly take notice, and (3) public documents. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The Court therefore considers the Mortgage and Assignment of Mortgage attached to Defendants' Motion to Dismiss without converting their motion to one for summary judgment. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

(Mortgage at 1.) In May 2011, MERS assigned the Mortgage to "The Bank of New York Mellon fka The Bank of New York as successor trustee to JPMorgan Chase Bank, N.A., as trustee for the Certificate Holders of CWABS Master Trust, Revolving Home Equity Loan Asset Backed Notes, Series 2004-J." (*Id.*, Ex. C, Assignment of Mortgage.)

In accord with Defendants' exhibits, Plaintiffs unmistakably provide that this action involves the real property situated at "17801 ROWE[;] TAX[] #21038057." (Am. Compl. ¶ 7.) Yet the attachments to Plaintiffs' Amended Complaint seem to pertain to a different property. Plaintiffs' "Evidence A" is a warranty deed for property at "Ward 21, Item No. 35746," i.e., Tax ID 21035746. (Am. Compl., Ex. A; *see also id.* at Ex. B, Ex. C at Pg ID 151.) "Evidence B" is an Assignment of Mortgage of that property and further specifies it as *17800* Rowe in Detroit, Michigan. (Am. Compl., Ex. B.)

Undoubtedly the two properties are proximate, and it appears that Jon Ethridge was a mortgagor of both. (*See* Defs.' Mot. to Dismiss, Ex. B; Am. Compl., Ex. B.) But based on their differing Tax IDs and street addresses, they are not the same property. The Court proceeds on the assumption that only 17801 Rowe and its mortgage are at issue in this case. If the Court is mistaken, none of Plaintiffs' claims are dismissed solely on the grounds that 17800 is not at issue.

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain "enough factual matter" that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Legal conclusions are not "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

3


conclusions, are not entitled to the assumption of truth." *Id.* The court can then turn to whether the remaining allegations plausibly give rise to an entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In applying the Rule 12(b)(6) standards to a complaint drafted by a *pro se* plaintiff, a court must be mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III. ANALYSIS

The Court has carefully reviewed Plaintiffs' Amended Complaint. (ECF No. 13.) Some of Plaintiffs' allegations are simply legal conclusions. Others, when cobbled together, provide minimal assertions of fact. But however one views the Amended Complaint, it fails to state a claim upon which relief may be granted. Dismissal is therefore warranted.

### A. Real Estate Procedures Act, Uniform Commercial Code, Truth In Lending Act, and Unjust Enrichment Claims

The Court begins with those allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The following fall into this category:

> 24. That all Defendants violated THE FEDERAL REAL ESTATE PROCEDURES ACT of 1974, 12 USC Sec 2601 et seq. and Regulation X, promulgated pursuant thereto, 24 C.F.R Part 3500, including subsequent amendments.
>
> 28. The Principal is in violation of UCC & 201 (39). . . .

4

> 34. That all Defendants have violated [the Truth in Lending Act].
>
> 36. That all Defendants received an unjust enrichment and made Plaintiff the injured party.

(Am. Compl. ¶¶ 24, 28, 34, 36.) Given the absence of factual allegations, these four allegations do not state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, Plaintiffs' Real Estate Procedures Act, Uniform Commercial Code, Truth In Lending Act, and Unjust Enrichment claims should be dismissed.[3]

### B. Fair Debt Collection Practices Act Claim

Paragraphs 8, 18, and 28 attempt to plead a violation of the Fair Debt Collection Practices Act ("FDCPA") for "Defendants['] fail[ure] to validate the debt upon request." (Am. Compl. ¶ 8; *see also id.* ¶¶ 18, 28 (citing 15 U.S.C. § 1692).) The provision of the FDCPA that Plaintiffs apparently rely on provides that in, or within five days after, "the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing," among other things, "a statement that if the consumer notifies the debt collector in writing [within thirty days after receipt of the notice] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4). The

---

[3]Defendants address a note-splitting argument. (Defs.' Mot. Summ J. at 9-10.) The Court believes that legal theory does not need to be addressed because Plaintiffs only implicate it in a section of the Amended Complaint entitled "Case Law In Support," which, as the title implies, is a section listing cases and their alleged holdings. (*See* Am. Compl. ¶¶ 37-46.) In any event, if Plaintiffs intended to plead a note-splitting claim, the related allegations also fall within the category of allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Amended Complaint, however, does not assert (1) that there was an "initial communication with [the Ethridges] in connection with the collection of any debt," (2) if there was such a communication, that it was made by a Defendant, or (3) if a Defendant made the communication, that Defendant was a "debt collector" within the meaning of the FDCPA. To extend the last point, the Court notes that none of the Defendants — Countrywide Home Loans, Inc., MERS, and Bank of America, NA — readily appear to be debt collectors. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) ("To this, the federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." (internal quotation marks and citation omitted)); *Partlow v. Aurora Loan Servs., LLC*, No. 11-12940, 2012 WL 12766, at *5 (E.D. Mich. Jan. 4, 2012) ("[I]t is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors." (internal quotation marks and citations omitted)). Accordingly, Plaintiffs have not pled a FDCPA claim.

### C. Fraud Claims

Plaintiffs also make several attempts to plead a fraud or silent fraud claim. (Am. Compl. ¶¶ 9, 20.) They say that they "immediately commenced an investigation and discovered certain bogus instruments which purported to divest plaintiff of all interest in the subject property by way of Silent Fraud . . . ." (Am. Compl. ¶ 9.) They also assert that "Defendants failure to disclose is a fraud as an actual misrepresentation based on the banks['] position of trust and confidence, facts that he has a duty to disclose because silence is or can only be equated with fraud." (Am. Compl. ¶ 20.) But the Amended Complaint leaves unanswered the critical questions, such as what "bogus instruments" did Plaintiffs uncover? And what information did Defendants have a duty to disclose but failed to?

And how did the allegedly bogus instruments or Defendants' silence induce Plaintiffs' detrimental reliance? Therefore, paragraphs 9 and 20 do not adequately plead a fraud claim. *See M & D, Inc. v. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998) (providing that, to establish a claim of fraud, a plaintiff must prove that (1) defendant[s] made a material representation; (2) the representation was false; (3) when the representation was made, the defendant[s] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant[s] made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976))); *Easton v. Fannie Mae*, No. 12-CV-10663, 2012 WL 1931536, at *2 (E.D. Mich. May 29, 2012) ("Plaintiff's conclusory assertion that certain documents are bogus and that there was misrepresentation, silent fraud, and fraud is insufficient to state a claim for fraud.").

Plaintiffs also raise fraud in the context of a breach of contract claim. They say,

> Defendants breached the agreement by the creation of fraudulent documents by known [ROBO SIGNERS] Terry Lawrence to document #1001944 -5000115166-2 which purported to contract with the Plaintiff by way of Silent Fraud also misrepresentation.
>
> Attached hereto as Exhibit B[.]

(Am. Compl. ¶ 14.) But Plaintiffs fail to plead which agreement they refer to or which provisions Defendants allegedly breached. They also fail to plead that the referenced assignment prepared by Terry Lawrence is fraudulent, even accepting as true that Terry Lawrence was a known "robo-signer" who fraudulently signed other documents. Moreover, the fraud allegation is belied by the attachment to the Amended Complaint supplementing the allegation. *HMS Prop. Mgmt. Group, Inc. v. Miller*, 69 F.3d 537 (6th Cir. 1995) ("[A] court may disregard allegations contradicted by facts

established in exhibits attached to the pleading."); *accord Hargrave v. Chief Asian, LLC*, No. 11-5112, 2012 WL 1573632, at *2 (10th Cir. May 7, 2012). First, the referenced exhibit, Exhibit B, is regarding an assignment of the mortgage for property located at 17800 Rowe — not 17801. (Am. Compl., Ex. B.) More importantly, the exhibit includes an article about the death of a *Tracy* Lawrence who pled guilty to notarizing around 25,000 fraudulent documents. (Am. Compl., Ex. B.) There is no allegation that Terry and Tracy are the same "known [ROBO SIGNER[]]."

Plaintiffs next say that MERS, through its Assistant Secretary, John Crandall, committed fraud. In particular,

> That JOHN CRANDALL as Assistant Secretary of MERS is also false and misleading and devoid, JOHN CRANDALL had no authorization from MERS to create nor sign these documents on beha[lf] of MERS which made the document silent fraud and money laundering with financial transactions in order to conceal the identity, source, and/or destination of gained money.
>
> Attached hereto as Exhibit C[.]

(Am. Compl. ¶ 16.) This allegation also fails to state a claim upon which relief may be granted. First, Exhibit C includes a copy of the "Assignment of Mortgage" for the 17800 Rowe property which, as discussed, is not at issue here. Second, and stronger, absent additional allegations, e.g., of double payment, Plaintiffs have not adequately pled standing to challenge the validity of MERS' assignment of the 17800 Rowe mortgage. *See Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) *cert. denied*, 131 S. Ct. 1696, 179 L. Ed. 2d 645 (U.S. 2011); *Cable v. Mortg. Elec. Registration Sys., Inc.*, No. 11-14877, 2012 WL 2374236, at *4 (E.D. Mich. June 22, 2012). Third, Exhibit C provides that John Crandall is an alleged robo-signer. (Am. Compl., Ex. C.) Courts have found that an unadorned assertion of robo-signing is not sufficient to state a claim of fraud. *Assasepa v JPMorgan Chase Bank*, No.

1:11-CV-156, 2012 WL 88162, at *8 (S.D. Ohio Jan. 11, 2012) ("While 'the Court is mindful of reports of financial institutions using so-called "robo-signers" to improperly sign documents used in the foreclosure process . . . . *Twombly* require[s] plaintiffs to set forth more than bare allegations of "robo-signing" without any other factual support.'" (quoting *Cerecedes v. U.S. Bankcorp*, No. 11-219 CAS, 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011))); *McCann v. U.S. Bank, N.A.*, No. 11-14804, 2012 WL 1902481, at *15 (E.D. Mich. May 25, 2012) (citing *Assasepa* with approval).

Accordingly, Plaintiffs have not pled a fraud claim.

### D. Fair Credit Reporting Act Claim

Next, Plaintiffs attempt to plead a violation of the Fair Credit Report Act ("FCRA"):

> That Unlawful practice of re-aging, a collection company must report the original date (actual month and year) the account first became delinquent. This is when the clock begins ticking. This is a violation of Section 623 (a) (5) of the FCRA and NCO was required to pay a $1,500.000.00 fine.

(Am. Compl. ¶ 25.) Section 623(a)(5) of the FRCA, 15 U.S.C. § 1681s-2(a)(5), requires a person "who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action" to timely "notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of the delinquency on the account that immediately preceded the action." Plaintiffs, however, have not alleged that any Defendant furnished information to any consumer reporting agency. Further, there is no private right of action under 15 U.S.C. § 1681s-2(a). *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 842 (E.D. Mich. 2010) ("There can be no doubt that the duties imposed by 15 U.S.C. § 1681s-2(a) can only be enforced by government agencies and officials."). An alleged violation of subsection (b) would not change things either, because "there is no allegation

that . . . the plaintiff[s'] credit has been unjustifiably marred, or that the plaintiff[s] communicated [their] belief of the mistake to the credit reporting agencies." *Id.*; *see also Farris v. Morgan Stanley Dean Witter Credit Corp.*, No. 08-CV-11851, 2010 WL 3023808, at *5 (E.D. Mich. July 29, 2010). Accordingly, Plaintiffs have not pled a Fair Credit Reporting Act claim.

### E. Servicer Performance Agreement and Tax Code Claims

Plaintiffs also assert a violation of a "Servicer Performance Agreement" and the "REMIC LAW," the latter apparently referring to rules the Internal Revenue Service imposes upon Real Estate Mortgage Investment Conduits. The Amended Complaint says: "[A]ll Defendants also are in violation of the Servicer Performance Agreement due to its poor bookkeeping of accounts also a violation of the REMIC LAW which is a Tax violation under the IRS that has criminal intent to defraud the Government!" (Am. Compl. ¶ 32; *accord id.* ¶ 23.) The Amended Complaint goes on to allege that a REMIC is a pass-through entity, i.e., the holders of mortgage-backed securities are taxed but the REMIC entity is exempted from taxation. (Am. Compl. ¶ 32.) Plaintiffs say that the "IRS [has] been concerned that the [entity-level] exemption" be limited to "passive investment vehicles" and that the tax code prohibits a REMIC from "among other things, buying or trading mortgages." (*Id.*)

Turning first to Plaintiffs' claim that Defendants have violated the "Servicer Performance Agreement," the Court questions whether Plaintiffs have standing to challenge Defendants' compliance with that agreement. *See Luster v. Mortg. Elec. Registration Sys.*, No. 11-CV-14166, 2012 WL 124967, at *3 (E.D. Mich. Jan. 17, 2012) ("Because there is no right to sue under [Home Affordable Modification Program], to the extent Plaintiffs allege a violation of [Home Affordable Modification Program] or the 'Servicer Performance Agreement,' the claim fails as a matter of

law."). In any event, Plaintiffs' reference to "poor bookkeeping" is vague and the Amended Complaint does not state which provisions of the agreement were allegedly breached. For these reasons, Plaintiffs have not adequately pled a cause of action. *See Hudson v. Mortg. Elec. Registration Sys., Inc.*, 11-13077, 2011 WL 5553814, at *3 (E.D. Mich. Nov. 15, 2011) ("Plaintiff has not explained how Defendants' allegedly 'poor bookkeeping' constituted a breach of the [Servicer Performance Agreement], leaving this matter to speculation. The Court concludes that Plaintiff's claim for breach of contract is so lacking in facts that it must be dismissed.").

The Court also doubts Plaintiffs' standing to challenge whether an entity is falsely holding itself out as a REMIC to qualify for tax exemptions — Plaintiffs appear in this case as mortgagors and have not alleged themselves to be investors in mortgage-backed securities. In any event, they have not pled how these Defendants — none of which are alleged to be a REMIC trust or the trustee of a REMIC trust — have violated the tax code. To the extent that Plaintiffs complain that their loans have been securitized, courts have found that this allegation, without more, is not a viable cause of action. *See Hague v. Wells Fargo Bank, N.A.*, No. C11-02366, 2011 WL 6055759, at *6 (N.D. Cal. Dec. 6, 2011) ("To the extent that Plaintiffs' claims rely on the securitization of the loan, via REMIC, into a mortgage-backed security, there is no merit to the contention that securitization renders the lender's loan in the property invalid. "); *Coleman v. Am. Home Mortg. Servicing, Inc.*, No. 11-00178, 2011 WL 6131309, at *4 (D. Nev. Dec. 8, 2011) ("[T]o the extent Plaintiff's allegations are construed to state claims regarding improper securitization of a mortgage, these also fail.").

Accordingly, Plaintiffs either do not have standing to plead, or have not pled, a viable Servicer Performance Agreement or REMIC tax-code claim.

### F. Michigan Compiled Laws § 600.2109 Claim

Plaintiffs next cause of action is based on Defendants' alleged violation of Mich. Comp. Laws § 600.2109. (Am. Compl. ¶¶ 9, 15.) As succinctly stated by another court in this District, this claim is without merit:

> As to plaintiff's claim that [defendant] violated Mich. Comp. Laws § 600.2109, this claim is likewise without merit. This statute establishes the criteria for the introduction of certain documents into evidence. This statute is therefore inapplicable and the claim is dismissed.

*Easton v. Fannie Mae*, No. 12-CV-10663, 2012 WL 1931536, at *3 (E.D. Mich. May 29, 2012); *see also Stafford v. Mortg. Elec. Registration Sys., Inc.*, No. 12-10798, 2012 WL 1564701, at *4 (E.D. Mich. May 2, 2012) (dismissing alleged violation of § 600.2109 because the plaintiff "[did] not allege any facts to support a claim for violation of this section, or even that a cause of action exists").[4]

### IV. CONCLUSION AND RECOMMENDATION

After Defendants filed an earlier motion to dismiss (ECF No. 9), Plaintiffs filed an Amended Complaint (ECF No. 13). For the reasons stated, that complaint fails to state a claim upon which relief may be granted. Further leave to amend should therefore be denied. Accordingly, the Court

---

[4]The statutory provision provides,
> All conveyances and other instruments authorized by law to be filed or recorded, and which shall be acknowledged or proved according to law, and if the same shall have been filed or recorded, the record, or a transcript of the record, or a copy of the instrument on file certified by the officer in whose office the same may have been filed or recorded, *may be read in evidence in any court within this state without further proof thereof; but the effect of such evidence may be rebutted by other competent testimony*.

Mich. Comp. Laws § 600.2109 (emphasis added).

RECOMMENDS that Defendants' Motion to Dismiss (ECF No. 19) be GRANTED and that this case be DISMISSED WITH PREJUDICE.

**V. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation by the district judge within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                               s/Laurie J. Michelson
                                               LAURIE J. MICHELSON
                                               UNITED STATES MAGISTRATE JUDGE

Dated: October 16, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 16, 2012.

<div style="text-align: right;">
s/Jane Johnson<br>
Deputy Clerk
</div>